UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN TATAR,                                    Case No. 10-12832

        Plaintiff,                          Nancy G. Edmunds
vs.                                            United States District Judge

TROTT & TROTT, P.C., *et al.*,                 Michael Hluchaniuk
                                               United States Magistrate Judge
        Defendants.
_____/

**REPORT AND RECOMMENDATION**
**MOTIONS TO DISMISS OR FOR SUMMARY JUDGMENT (Dkt. 19, 20)**

## I.   PROCEDURAL HISTORY

Plaintiff filed his initial complaint on July 19, 2010.  (Dkt. 1).  Defendants

Trott & Trott and Wachovia[1] filed motions for summary judgment in lieu of filing

answers to the complaint.  (Dkt. 2, 3).  This matter was referred to the undersigned

for all pretrial proceedings on August 10, 2010.  (Dkt. 6).  A hearing was held on

the motions for summary judgment on November 12, 2010.  Two days before the

hearing the hearing, plaintiff filed an amended complaint.  (Dkt. 14).  At the

hearing, the Court indicated that defendants should file amended motions for

summary judgment based on plaintiff's amended complaint.  On December 3,

2010, defendants filed their amended motions for summary judgment.  (Dkt. 19,

_____

[1] The remaining defendants have not yet been served with the summons and complaint.

20).  Plaintiff filed a response to Wachovia's motion on December 17, 2010 and an

addendum.  (Dkt. 21, 22).  On January 10, 2011, plaintiff filed a response to Trott

& Trott's motion for summary judgment.  (Dkt. 24).  These matters are now ready

for report and recommendation.

For the reasons set forth below, the undersigned **RECOMMENDS** that

defendants' motions to dismiss and/or for summary judgment be **GRANTED** in

part and **DENIED** in part, without prejudice.  Should this report and

recommendation be adopted, the only remaining pending claims would be those

under the Fair Debt Collection Practices Act.

## II.    FACTUAL BACKGROUND

A.    <u>Plaintiff's Amended Complaint</u>

Plaintiff's amended complaint is 75 single-spaced pages and contains 38

separate counts.  (Dkt. 14).  It contains a jurisdictional statement which includes

references to the Truth in Lending Act, Regulation Z, RICO, Title 18, Title 28,

Title 42, the federal Horton Anti-Trespass Act, the Whistleblower's Protection Act,

the Michigan Elliott-Larsen Civil Rights Act, among other citations to various

statutes and cases.  In addition, plaintiff includes a "Table of Lawful Authorities",

which is a soup to nuts of statutory and other citations, include various federal

rules of civil procedure, the Articles of Confederation to the Mayflower Compact

to the Uniform Commercial Code.

According to plaintiff, he realized in March of 2008 that there were "some irregularities" in his mortgage loan documents. The note and mortgage were two separate instruments and the note created the actual money for plaintiff to pay off the home with his social security trust account held in escrow and the mortgage was a separate instrument that was also a loan to him. According to plaintiff, the problem is that he did not receive any actual money. He then requested from the mortgage company to validate the loan and for a wet "blud ink" signature under the "FTCPA." (Dkt. 14, p. 13). In October 2008, plaintiff sent defendants a "constructive notice" of a breach of contract because they did not respond to his initial inquiry. In December 2008, plaintiff filed a UCC Notice of Lien with the Office of the Great Seal. In January 2009, plaintiff sent to Wachovia a (1) notice of a right to cancel; (2) notice of removal of trustee; and (3) removal of power of attorney. According to plaintiff, he believed he had the right to change the "contractor" any time he wanted to and that he did not receive the notices of assignment as required, which gave him a corresponding right to rescind the mortgage.

Plaintiff then recounts the history of the collections efforts made after he stopped paying his mortgage payments and the various correspondence he sent to defendants and others. Plaintiff then quit-claimed his property to himself. Plaintiff received a notice in September 2009 from Trott & Trott regarding the Sheriff's

sale.  According to plaintiff, the sale did not happen until November 18, 2009 and he was never notified of that sale.  Plaintiff objects to the sheriff's sale as fraudulent and in violation of state law because this action was pending at the time of the sale.

Plaintiff then requested documents from Wells Fargo, Wachovia Bank and First American Title.  Plaintiff also sent a "constructive notice" to Miles Winn of Keller Williams Realty Company of his intent to lien the property.  Plaintiff then initiated eviction proceedings against the tenant living in the property.  At that point, he learned of the attempts of Mr. Will to sell the property to his tenant.  In July 2010, plaintiff filed the original complaint in this matter, which was entitled "lis pendens."  (Dkt. 1).  Plaintiff then recounts some the procedural history in this case and in a state court case.

Plaintiff's amended complaint sets forth alleged violations of the Constitution, and alleges "capitol felony treason" in violation of Title 18, perjury, fraud, unlawful foreclosure, and 38 separate counts, which quote various statutory sections.  These counts include: (1) conspiracy to violate plaintiff's constitutional rights; (2) the commission of various federal crimes; (3) violations of 42 U.S.C. §§ 1982, 1983, 1985, 1986, 1987, 1988, 1994; (4) other federal civil rights laws including those barring discrimination based on race, color, religion or national origin; (5) violations of several Michigan criminal statutes, including trespass,

malicious prosecution, abuse of process, possession of a firearm during the commission of felony, false impersonation of a public officer, false pretenses, fraudulent disposition of personal property, and conspiracy; (6) violations of the Fair Debt Collection Practices Act; and (7) treason, rebellion, and insurrection.

B.     Defendants' Motions

The main facts do not appear to be in dispute.  On December 16, 2006, plaintiff executed a note and mortgage in favor of World Savings Bank, FSB (n/k/a Wachovia Bank). (Dkt. 19, Ex. A).  The mortgage contained a power of sale clause, which became operative when plaintiff stopped paying his mortgage payments. *Id*.  Plaintiff was sent an FDCPA letter on August 14, 2009.  (Dkt. 19, Ex. B).  Foreclosure proceedings were commenced on that same date.  (Dkt. 19, Ex. C).  Plaintiff sent a dispute of the debt on August 29, 2009.  (Dkt. 19, Ex. D). The dispute was acknowledged and Wachovia responded with a payment history on September 9, 2009.  (Dkt. 19, Ex. E).  Wachovia was the successful purchaser at the November 19, 2009 foreclosure sale.  (Dkt. 19, Ex. C).  Plaintiff sent a second dispute letter on January 14, 2010.  (Dkt. 19, Ex. F).  Wachovia responded on January 14, 2010. (Dkt. 19, Ex. G).  Plaintiff sent a third letter on February 19, 2010.  (Dkt. 19, Ex. H).  Wachovia responded to the third letter on March 2, 2010. (Dkt. 19, Ex. I).  The statutory redemption period expired on May 18, 2010.  (Dkt. 19, Ex. C).  According to Wachovia, plaintiff did not attempt to redeem the

property or challenge the foreclosure proceedings during the redemption period.
Plaintiff remains in possession of the property at issue.  Plaintiff filed the
complaint in this matter on July 10, 2010.

Defendants posit several arguments in their motions for summary judgment
and/or to dismiss.  (Dkt. 19, 20).  Defendants argue that plaintiff's complaint
should be dismissed because it fails to comply with Rule 8 and 10.  Essentially,
they assert that plaintiff's complaint is so incoherent and so violative of these basic
rules of pleading that it should be dismissed for failure to state a claim on which
relief may be granted.

In addition, Trott &Trott argues that by his claims, plaintiff argues that he is
owed a duty of care by his adversary's law firm.  Trott &Trott asserts that this
position is untenable and unsupported in the law.  Thus, plaintiff also fails to state
a claim for this reason.  As to plaintiff's Fair Debt Collections Practices Act claim,
Trott &Trott asserts that it too must fail because the amended complaint fails to
even allege that Trott &Trott is a debt collector and does not allege any facts that
plausibly support a claim that Trott &Trott is a debt collector.  In addition, the
mere placement of a disclaimer on its letterhead indicating that it is a debt
collector, according to Trott & Trott, is insufficient as a matter of law to transform
it into a debt collector.  Trott &Trott also asserts that even though it is not a debt
collector, it fully complied with the requirements of the FDCPA.

Wachovia also asserts that plaintiff's complaint should be dismissed because plaintiff's fraud claim does not satisfy Rule 9(b), the FDCPA claim is time-barred, any tort claims asserted by plaintiff arise from an alleged breach of contract and are barred under Michigan law.  In addition, according to Wachovia, plaintiff has no standing to challenge the foreclosure at this point.  Wachovia also argues that much of plaintiff's claim is based on some alleged improper assignment of the mortgage. However, plaintiff's mortgage was never assigned.  Further, plaintiff's claim that the appointment of Ralph Leggat as a Special Deputy was somehow improper or invalidates the foreclosure sale is not supported by the facts or law.  Plaintiff's constitutional claims must fail because a foreclosure by advertisement does not involve any state action.  Finally, Wachovia asserts that its responses to plaintiff's request to validate the debt complied with the FDCPA.

C.    Plaintiff's Responses

Plaintiff asserts that he has proven fraud and refers to his Exhibits P, V, and T.  (Dkt. 21).  He also argues that the foreclosure was unlawful because it conflicted with truth in lending law, the Troubled Asset Relief Program and Mich. Comp. Laws §§ 600.3201-3204.  Plaintiff asserts that the sheriff's sale was unlawful because the special deputy sheriff had no authority to conduct the sale. According to plaintiff, defendants have never proven their constitutional standing as a holder in due course to enforce the mortgage or note.

As to defendant Trott & Trott, plaintiff argues that they acted as not just mere attorneys, but they are proper defendants because they own 50% of MERS. Plaintiff also asserts that defendants have failed to comply with the UCC. Plaintiff says he was denied due process because he did not get adequate notice of the foreclosure and defendants violated his constitutional rights because they interfered in his control and management of his property without lawful authority. Plaintiff asserts that defendants have unclean hands and that he has a right to have the contracts construed in his favor.

## III.   ANALYSIS AND CONCLUSIONS

### A.   Dismissal Under Rules 8 and 10

The Federal Rules of Civil Procedure require that a complaint (1) contain "a short and plain statement of the claim," and (2) "be simple, concise, and direct." Fed.R.Civ.P. 8(a), (e). Rule 10(b) states that claims must be made in numbered paragraphs; the contents of each are to be limited to a statement of a single set of circumstances; and, claims founded on separate transactions or occurrences are to be stated in separate counts if a separation facilitates a clear presentation. Here, plaintiff's amended complaint violates Rule 8(a) and Rule 10(b). "What constitutes a short and plain statement must be determined in each case on the basis of the nature of the action, the relief sought, and the respective positions of the parties in terms of the availability of information and a number of other pragmatic

matters."  5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure

§ 1217 at 240-41 (3d ed. 2004).  A plaintiff properly pleads a claim for relief by

"briefly describing the events" supporting the claim.  *Peabody v. Griggs*, 2009 WL

3200686, *3 (D. R.I. 2009), quoting, *Sanjuan v. American Bd. Of Psychiatry &*

*Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994).  The statement of the claim

should be short because "unnecessary length places an unjustified burden on the

court and on the party who must respond to it."  *Id*., quoting, *Laurence v. Wall*,

2007 WL 1875794, *1 (D. R.I. 2007); *see also* Wright & Miller § 1281 at 709

("[u]nnecessary prolixity in a pleading places an unjustified burden on the district

judge and the party who must respond to it because they are forced to ferret out the

relevant material from a mass of verbiage").  "The statement should be plain

because the principal function of pleadings under the Federal Rules is to give the

adverse party fair notice of the claim asserted to enable him to answer and prepare

for trial."  *Id*., quoting, *Laurence*, 2007 WL 1875794 at *1.  As noted by several

courts, this principle is particularly significant because a defendant is required,

pursuant to Rule 8(b), to  "plead one of three alternatives in response to all of the

allegations in a complaint..."  *Id.*, quoting, *Indiana Regional Council of Carpenters*

*Pension Trust Fund*, 2006 WL 3302642, *2 (N.D. Ind. 2006); *see also*

*Calderon-Garnier v. Sanchez-Ramos*, 439 F.Supp.2d 229 (D. P.R. 2006), aff'd,

506 F.3d 22 (1st Cir. 2007).  But the complaint here presents a "dense thicket" of

"incomprehensible" assertions.  *See e.g.*, *Eisenstein v. Ebsworth*, 148 Fed.Appx.

75, 77 (3d Cir. 2005) (affirming order dismissing complaint for, *inter alia*,

violating Rule 8).

Further, the amended complaint is characterized by what many courts have

described as "buzzwords" or "gibberish[.]"  *See e.g. Coghlan v. Starkey*, 852 F.2d

806, 812-16 (5th Cir. 1988) (collecting cases); *Ramos v. Thornburg*, 732 F.Supp.

696, 702 (E.D. Tex. 1989); *Yocum v. Summers*, 1991 WL 171389 (N.D. Ill. 1991);

*McCutcheon v. N.Y. Stock Exchange*, 1989 WL 82007 (N.D. Ill. 1989); *U.S. v.*

*Messimer*, 598 F.Supp. 992, 993 (C.D. Cal. 1984) (describing pleadings filed by

*pro se* litigant as "thirty-four pages of bizarre, repetitive and incomprehensible

claims, contentions and sometimes gibberish"); *Bryant v. U Haul*, 1994 WL 67803

(E.D. Pa. 1994) ("Aside from these slight variations, each complaint consists

merely or an unintelligible recitation of unconnected names and places or similar

gibberish.").

The requirement of a short, plain statement of the claim and entitlement to

relief was not supplanted by the pleading standards set forth in *Twombly/Iqbal*.

*See e.g. Tamayo v. Blagojevich*, 526 F.3d 1074, 1082-83 (7th Cir. 2008)

("Although *Twombly* retooled federal pleading standards ... and retired the

oft-quoted *Conley* motion to dismiss no set of facts standard, *Twombly* did not

supplant the basic notice-pleading standard.") (internal quotation marks omitted);

*see also Hensley Manufacturing v. Propride, Inc.*, 579 F.3d 603, 609 (6th Cir.

2009).  Indeed, a "plaintiff still must provide only enough detail to give the

defendant fair notice of what the claim is and the grounds upon which it rests...."

*Tamayo*, 526 F.3d at 1083 (internal quotation marks and citation omitted).

*Twombly* specifically provided that "a complaint attacked by a Rule 12(b)(6)

motion to dismiss does not need detailed factual allegations ... ."  *Bell Atlantic

Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  However, a complaint only survives

a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to

state a claim to relief that is plausible on its face."  *Courie v. Alcoa Wheel &

Forged Products*, 577 F.3d 625 (6th Cir. 2009), quoting, *Ashcroft v. Iqbal*, — U.S.

—, 129 S.Ct. 1937, 1949 (2009).

Thus, in the wake of *Twombly/Iqbal*, a complaint must still comply with

Rule 8(a), which prohibits excessively detailed, unnecessarily complicated,

argumentative, and extraneous facts.  *See e.g.*, *Lease v. Fishel*, 2009 WL 922486,

*2 (M.D. Pa. 2009) (The "mash of allegations [in this complaint] read more like a

novel than a legal pleading and frequently digress into improper argumentative

detail."); *Fritz v. County of Kern*, 2009 WL 382741, *2 (E.D. Cal. 2009) (a

"complaint is not a novel - background allegations and evidentiary detail are

simply unnecessary and violate Rule 8(a)(2).").  The undersigned concludes that

plaintiff's amended complaint contains far too much detail, extraneous

information, and incomprehensible gibberish.  And, "any claims that may meet the pleading requirements of Rule 8(a) as clarified by *Iqbal* and *Twombly* are simply lost in the sea of insufficiently pled or wholly unsustainable claims." *Dumas v. Hurley Medical Center*, 2011 WL 1465785, *1 (E.D. Mich. 2011).

Generally, where a plaintiff is *pro se*, complaints are to be liberally construed and not to be held to the same stringent standard as formal pleadings drafted by attorneys.  *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  Courts are reluctant to dismiss on procedural grounds alone.  *Agee v. Wells Fargo Bank*, 2010 WL 1981047, *2 (E.D. Mich. 2010).  "As has been recognized by our circuit and others, despite liberal pleading requirements for *pro se* litigants, it is not the role of the court to guess the nature of the claim(s) asserted." *Id*., citing, *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *Nuclear Transportation & Storage, Inc. v. United States*, 890 F.2d 1348 (6th Cir. 1989); *Chapman v. City of Detroit*, 808 F.2d 459 (6th Cir. 1986).  In this case, as in *Agee*, "no more than guessing could take place." *Id*.  Thus, despite plaintiff's *pro se* status, the undersigned concludes that dismissal is appropriate, except as to plaintiff's FDCPA claims, as discussed below.

B.    Standards of Review

1.    Rule 12(b)(6)

The Supreme Court recently raised the bar for pleading requirements beyond

the old "no-set-of-facts" standard of *Conley v. Gibson*, 355 U.S. 41, 78 (1957), that

had prevailed for the last few decades.  *Courie v. Alcoa Wheel & Forged Products*,

577 F.3d 625, 2009 WL 2497928, *2 (6th Cir. 2009), citing, *Ashcroft v. Iqbal*, —

U.S. —, 129 S.Ct. 1937, 1949 (2009); *see also Twombly*, 550 U.S. at 555.  In

*Iqbal*, the Supreme Court explained that a civil complaint only survives a motion to

dismiss if it "contain[s] sufficient factual matter, accepted as true, to state a claim

to relief that is plausible on its face."  *Iqbal*, 129 S.Ct. at 1949.  The Sixth Circuit

observed that this new standard is designed to screen out cases that, while not

utterly impossible, are "implausible."  *Courie*, at *2.  "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged."

*Iqbal*, 129 S.Ct. at 1949.  And although the Court must accept all well-pleaded

factual allegations in the complaint as true, it need not "'accept as true a legal

conclusion couched as a factual allegation.'"  *Twombly*, 550 U.S. at 555, quoting,

*Papasan v. Allain*, 478 U.S. 265, 286 (1986); *see also Iqbal*, 129 S.Ct. at 1949.

The Sixth Circuit noted that "[e]xactly how implausible is 'implausible' remains to

be seen, as such a malleable standard will have to be worked out in practice."

*Courie*, *2.

    Where a plaintiff is proceeding without the assistance of counsel, the court is

still required to liberally construe the complaint and hold it to a less stringent

standard than a similar pleading drafted by an attorney. *See e.g. Simmons v.*
*Caruso*, 2009 WL 2922046 (E.D. Mich. 2009), citing, *Haines v. Kerner*, 404 U.S.
519, 520 (1972); *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999).
Thus, the Court must still read plaintiff's *pro se* complaint indulgently and accepts
plaintiff's allegations as true, unless they are clearly irrational or wholly incredible.
*Denton v. Hernandez*, 504 U.S. 25, 33 (1992); *Erickson v. Pardus*, 551 U.S. 89, 94
(2007) (The Court of Appeals improperly departed "from the liberal pleading
standards set forth by Rule 8(a)(2)" and failed to "liberally construe" the *pro se*
complaint at issue.).

2.    Summary judgment

Summary judgment is appropriate when the record reveals that there are no
genuine issues as to any material fact in dispute and the moving party is entitled to
judgment as a matter of law. Fed.R.Civ.P. 56(c); *Kocak v. Community Health*
*Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005); *Thomas v. City of*
*Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). The standard for determining
whether summary judgment is appropriate is "whether the evidence presents a
sufficient disagreement to require submission to a jury or whether it is so one-sided
that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v.*
*McGowan*, 421 F.3d 433, 436 (6th Cir. 2005), quoting, *Anderson v. Liberty Lobby*,
*Inc.*, 477 U.S. 242, 251-52 (1986); *see also Tucker v. Union of Needletrades Indus.*

*& Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005).  The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion.  *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

Under Federal Rule of Civil Procedure 56, a party asserting a fact that cannot be or is not genuinely disputed must support that assertion by citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declaration, stipulations, admission, interrogatory answers, or other materials; or a showing that the materials cited do not establish the absence or presence of a genuine dispute or that an adverse party cannot produce admissible evidence to support the fact.  Fed.R.Civ.P. 56(c)(1).[2]

---

[2] Formerly, "Rule 56(e) require[d] that sworn or certified copies of all papers referred to in an affidavit must be attached to or served with that affidavit ... To be admissible, documents must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence." *Johnson v. Memphis City Schools*, 2010 WL 1957267, *2 (W.D. Tenn. 2010), quoting, 10A Charles A. Wright, Arthur R. Miller and Mary Kay Kane, Federal Practice & Procedure, § 2722, at 379-80 & 382-84 (1988). According to the Advisory Comments to the recent amendments, this specific requirement was omitted because as unnecessary given the requirement in subdivision (c)(1)(A) that a statement or dispute of fact be supported by materials in the record. Comments, 2010 Amendments to Fed.R.Civ.P. 56, subdivision (c). Notably, the language changes have not changed the standard itself.  *Id*. ("The standard for granting summary judgment remains unchanged.").

C.      Challenges to the Foreclosure

Defendant argues that plaintiff does not have "standing"[3] to challenge the

foreclosure sale because he does not possess any interest in the property.

According to defendants, plaintiff lost "standing" to challenge the foreclosure sale

after the expiration of the redemption period on May 18, 2010.  Mich. Comp. Laws

§ 600.3240(8).  Plaintiff filed this lawsuit two months later, on July 19, 2010.

(Dkt. 1).  Following foreclosure, the rights and obligations of the parties are

---

[3] As noted by multiple district courts in Michigan, the use of the term "standing" to dismiss such mortgage-related claims is a bit of a misnomer.  *See Brezzell v. Bank of America*, 2011 WL 2682973, *4 n. 3 (E.D. Mich. 2011), citing, *Langley v. Chase Home Fin. LLC*, 2011 WL 130926, *2 n. 2 (W.D. Mich. 2011).  As noted in *Brezzell*, the *Langley* court concluded that the "standing" discussion in *Overton, infra*, "that many defendants raise is a bit of a red herring, and that courts should view *Overton* as a merits decision and not a standing decision.":

> Many [d]efendants suggest the basis for the ruling in *Overton* is a
> lack of [a p]laintiff's standing once the redemption period expires,
> but the [Michigan court of appeals] does not actually say this.  Nor
> would it seem like Article III standing could possibly be in doubt.
> After all, the [p]laintiffs in such cases are the last lawful owner and
> possessor of the property.  Moreover, they often remain in
> continuing possession of the property notwithstanding any
> [s]heriff's sale and expiration of a redemption period.  Moreover,
> [p]laintiffs in such cases claim a continuing right to lawful
> ownership and possession based on defects in the process used by
> [d]efendants to divest them of those rights. This certainly seems to
> satisfy this basic Article III requirement of "injury in fact," as well
> as any prudential considerations tied to a "zone of interests"
> analysis. Indeed, it is hard to imagine a person with a better claim
> to standing to challenge the process at issue. Of course, having
> standing to bring a claim does not mean you have a valid claim on
> the merits. That is a different question. *Overton* is best viewed as a
> merits decision, not a standing case.

*Id.*  The *Brezzell* court agreed with the analysis in *Langley*, but found *Overton* persuasive in concluding that the plaintiff's claim lacked merit.  *Langley*, at *4.

governed by statute.  *Senters v. Ottawa Savings Bank, FSB*, 443 Mich. 45, 50-53,
503 N.W.2d 639 (1993).  After a sheriff's sale, a mortgagor is entitled to a period
of time in which to redeem the property.  Mich. Comp. Law. § 600.3240(1).  The
statutory redemption period for this residential real property was six months.
Mich. Comp. Law § 600.3240(8).  At the expiration of the statutory redemption
period, the purchaser of the sheriff's deed (here, Wachovia) is vested with "all the
right, title, and interest" in the property.  Mich. Comp. Law. § 600.3236; *see also
Piotrowski v. State Land Office Bd.*, 302 Mich. 179, 187, 4 N.W.2d 514 (1942)
(noting that the "[p]laintiffs . . . lost all their right, title, and interest in and to the
property at the expiration of their right of redemption . . . .").

Defendants assert that plaintiff never attempted to redeem or challenge the
foreclosure proceedings during the redemption period.  The undersigned agrees.
Plaintiff sent three letters to Wachovia, only one of which mentioned anything
about the foreclosure and did not challenge any aspect of the proceeding.  Plaintiff
asked Wachovia whether HUD assigned or transferred foreclosure rights to it
under 12 U.S.C. § 3754, whether any investor had approved the foreclosure of his
property, and for the identity of all persons who approved the foreclosure.  (Dkt.
19-5, Pg ID 491).  This letter does not constitute a "challenge" to the foreclosure
proceeding sufficient to forestall the application of the § 600.3236.  Simply,
plaintiff did not redeem the property or challenge the foreclosure during the

Report and Recommendation
Motions to Dismiss/Summary Judgment
*Tatar v. Trott & Trott*; Case No. 10-12832

six-month redemption period.  Instead, plaintiff filed this lawsuit after the

redemption period expired.  Thus, the undersigned agrees with defendants that, on

July 6, 2010, that the purchaser of the sheriff's deed was vested with "all the right,

title, and interest" that plaintiff previously held in the property.  This rule has been

applied repeatedly in this District under similar circumstances.  *See e.g.*, *Williams*

*v. U.S. Bank Nat'l Ass'n*, 2011 WL 2293260, *1 (E.D. Mich. 2011) (O'Meara, J.),

citing, *Moses, Inc. v. Southeast Mich. Council of Gov'ts*, 270 Mich.App. 401, 716

N.W.2d 278, 286 (2006) (holding, "[o]nce the redemption period following

foreclosure of property has expired, the former owner's rights in and title to the

property are extinguished."); *Nafso v. Wells Fargo Bank, NA*, 2011 WL 1575372,

*2 (E.D. Mich. 2011) (Cohn, J.) (citation omitted) (holding that, after the

redemption period has expired, the right, title, and interest in the property is then in

the purchaser of the sheriff's deed's hands.); *see also Mission of Love v. Evangelist*

*Hutchinson Ministries*, No. 266219, 2007 WL 1094424, *5 (Mich.App. 2007)

("After the redemption period expired, plaintiff no longer had any right or interest

in the property, because the property had been validly purchased at a foreclosure

sale.  At that point, the trial court could not grant plaintiff the relief it sought (title

to the property) if it were successful in its suit.").

　　　　Moreover, once a foreclosure sale has taken place and the redemption period

has expired, only a strong showing of fraud or irregularity can undo the sale.

*Overton v. Mortg. Elec. Registration Sys.*, 2009 WL 1507342, at *1 (Mich.App. 2009) (citation omitted) ("The law in Michigan does not allow an equitable extension of the period to redeem from a statutory foreclosure sale in connection with a mortgage foreclosed by advertisement and posting of notice in the absence of a clear showing of fraud, or irregularity.").  In *Overton*, the plaintiff alleged that the defendants committed fraud in foreclosing his property.  *Id.* at *1.  The court noted that the plaintiff had defaulted on his mortgage and received notice of the default, yet still did nothing to redeem the property or challenge the foreclosure sale during the redemption period.  *Id.*  The court held that the plaintiff was "simply trying to wage a collateral attack on the foreclosure of the property."  *Id.* The only way for the plaintiff to get around this lack of "standing," was to show that there was a "clear showing of fraud [ ] or irregularity."  *Id.*  Once the redemption period expired, all of plaintiff's rights in and title to the property were extinguished."  *Id.* (citation omitted).

Here then, because the redemption period has expired, plaintiff must make a clear showing of fraud or other irregularity to set aside the foreclosure sale and succeed on his claim.  According to plaintiff, the sale did not happen until November 18, 2009 and he was never notified of that sale.  Plaintiff objects to the sheriff's sale as fraudulent and in violation of state law because this action was

pending at the time of the sale.[4]  He also argues that the foreclosure was unlawful because it conflicted with truth in lending law, the Troubled Asset Relief Program and Mich. Comp. Laws §§ 600.3201-3204 (foreclosure by advertisement statute). Plaintiff asserts that the sheriff's sale was unlawful because the special deputy sheriff had no authority to conduct the sale.

Arguments such as those posed by plaintiff here have been rejected in this District as insufficient allegations or proof of fraud or other irregularities.  In *Nafso*, the court held that the following alleged irregularities were not sufficient to void the foreclosure sale: (1) that the plaintiff had "standing because there was an actual dispute as to whether notice of the foreclosure was posted at the property as required [by Mich. Comp. Law § 600.3208];" and (2) the "foreclosure was invalid because [the bank] did not provide him with proper notice of his right to request a modification meeting under [Mich. Comp. Law § 600.3205a(1)(b).]" *Nafso*, 2011 WL 1575372, at *3.  The court further held that the plaintiff could not show any prejudice that resulted from either alleged defect "where he did not attempt to redeem the property and waited until the day before the redemption period expired to challenge the sheriff's sale, and at no time requested a stay of the sale." *Id*.  The court therefore held that the plaintiff did not state a claim for relief as to a defect in

---

[4]  However, plaintiff did not file this action until long after the sale and the expiration of the redemption period.

the foreclosure proceedings.  *See also Kama v. Wells Fargo Bank*, 2010 WL
4386974, *2 (E.D. Mich. 2010) (Hood, J.) (granting summary judgment on the
standing argument to the defendants when they provided a sheriff's affidavit
verifying that the defendants properly posted notice of and conducted a sheriff's
sale on the property, the plaintiff made no effort to stay or challenge the
foreclosure sale until after the redemption period.  The court also rejected the
plaintiff's argument that an allegation of not receiving notice was "a clear showing
of fraud or irregularity" sufficient to set aside the sale.).

The Sheriff's sale was conducted by Special Deputy Ralph Leggat on
November 19, 2009, during the Special Deputy Sheriff Term outlined in the
Appointment.  As a properly deputized special deputy, he was authorized to
conduct the sale on the property.  *See e.g.*, *Drew v. Kemp-Brooks*, 2011 WL
2936103, *6 (E.D. Mich. 2011).  Michigan law allows for the creation of special
deputies who may be deputized for the purposes of performing particular acts.
Michigan Compiled Laws § 51.70 provides that "[p]ersons may also be deputed by
a sheriff, by an instrument in writing, to do particular acts, who shall be known as
special deputies ...."  Mich. Comp. Laws § 51.70. In other words, § 51.70
specifically allows a sheriff to appoint special deputies to perform any particular
acts that the Sheriff himself is authorized by law to perform.  *Drew*, at * 6, citing,
*Tower v. Welker*, 93 Mich. 332, 335; 53 N.W. 527 (1892) (finding that Michigan

law allows sheriffs to appoint deputies and undersheriffs who, once appointed, have all of the ministerial powers of a sheriff: "In general, all ministerial duties which the principal himself has a right to perform may be discharged by a deputy.").  Moreover, the Michigan Court of Appeals has recently held that a special deputy appointed under § 51.70, such as Leggat, can perform foreclosure sales.  *Kubicki v. Mortgage Electronic Registration Sys.*, —— Mich.App. ——, 2011 WL 668118 (2011); *see also English v. Flagstar Bank*, 2009 WL 4730450, *2 (E.D. Mich. 2009) (holding special deputy's appointment by undersheriff valid). As such, plaintiff's claim that the sale was invalid because of Legatt's role fails to state a claim.

In addition, plaintiff's claim that alleged violations of the Truth in Lending Act during the initial mortgage transaction do not invalidate the foreclosure and in any event, his TILA claim (seemingly for rescission)[5] was brought more than three years after consummation of the loan transaction and it is therefore, time-barred. *See Beach v. Ocwen Federal Bank*, 523 U.S. 410 (1998) (A mortgagor cannot assert right to rescind as recoupment defense in foreclosure action brought by mortgagee more than three years after consummation of loan transaction); *See also*

---

[5]  To the extent that plaintiff asserts a claim for damages under TILA, these claims too are time-barred under TILA's one-year statute of limitations.  Pursuant to 15 U.S.C. § 1640(e), "[a]ny action under this section may be brought in any United States district court, or in any other court of competent jurisdiction within one year from the date of the occurrence of the violation."  15 U.S.C. § 1640(e).

Report and Recommendation
Motions to Dismiss/Summary Judgment
*Tatar v. Trott & Trott*; Case No. 10-12832

*Campbell v. Deutsche Bank Nat. Trust Co.*, 2011 WL 2533577, *4 (E.D. Mich. 2011).

Here, plaintiff has not alleged fraud or irregularities sufficient to set aside the foreclosure and has not shown any prejudice that resulted from any defect: he did not attempt to redeem the property, he did not request a stay of the sale, and he did not file suit challenging the foreclosure until July 2010, two months after the redemption period expired.  Thus, dismissal and/or summary judgment in defendants' favor as to all of plaintiff's claims seeking to set aside the foreclosure and any TILA claims should be granted.

D.    FDCPA

Trott & Trott's status as a debt collector under the FDCPA is unclear based on the record currently before the Court.  Trott & Trott argues that it is not a debt collector under the FDCPA because that plaintiff has not met his burden of proof.  However, defendant, as the moving party seeking summary judgment, must at least come forward with some evidence to show that it does not satisfy the definition of "debt collector" and it has not done so, as described below in detail.

The FDCPA defines a debt collector as follows:  "Any person who uses any instrumentality of interstate commerce or the mails in any business the principle of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due

another."  15 U.S.C. § 1692a(6).  In several decisions, judges in the Eastern

District of Michigan have held that "[a]ttorneys who merely represent creditors and

do not send demand letters to debtors do not act as 'debt collectors' under the

FDCPA."  *Waller v. Life Bank*, 2007 WL 3104917 (E.D. Mich. 2007) (Duggan, J.);

*Williams v. Trott*, 822 F.Supp. 1266, 1268-69 (E.D. Mich.1993) (Edmunds, J.);

*TerMarsch v. Fabrizio & Brook, P.C.*, 2006 WL 3313744 (E.D. Mich. 2006)

(Duggan, J.); *McCall v. GMAC Mort. Corp.*, 2007 WL 1201535 (E.D. 2007)

(Feikens, J.); *Mabry v. Ameriquest Mort. Co.*, 2010 WL 1052353 (E.D. Mich. 2010

(Whalen, M.J.).  The Supreme Court has recognized, however, that law firms may

qualify as debt collectors for purposes of the FDCPA and lawyers do not get a

"pass" on the FDCPA merely because they hold a law license.  *See Heintz v.

Jenkins*, 514 U.S. 291 (1995); *see also Jerman v. Carlisle, McNellie, Rini, Kramer

& Ulrich LPA*, ⸺ U.S. ⸺, 130 S.Ct. 1605, 1606 (2010).  The potential conflict

between case law in this District and that from the Supreme Court has been

recognized, but not resolved.  *See e.g.*, *Thomas v. Trott & Trott*, 2011 WL 576666,

(E.D. Mich. 2011) (Zatkoff, J.) ("Contrary to the Act's language and the Supreme

Court, the cases in this Circuit have held that a lawyer that pursues a non judicial

foreclosure for a lender is not a "debt collector" as the term is defined in

§§ 1692a(5), (6).") (collecting cases).

　　　A review of these cases reveals no real conflict, in the view of the

undersigned.  As Judge Edmunds initially observed in *Williams v. Trott*, most cases finding that an attorney acted as a debt collector did so where the attorney had sent a demand for payment letter to the debtor.  *Id.* at 1268.  In that case, Judge Edmunds concluded that no demand letter had been sent by the lawyer or the law firm, who was merely assisting their client with a non-judicial foreclosure and communicated with the plaintiff regarding that foreclosure.  As the Sixth Circuit has recognized, where an attorney sends a letter demanding payment, the lawyer is acting as a debt collector under the FDCPA.  *See Kistner v. Law Offices of Michael P. Margelefsky*, 518 F.3d 433, 439 (6th Cir. 2008).  Letters virtually identical to the one sent by Trott & Trott to plaintiff in this case have been held not to be "demand" letters under the FDCPA.  *See Claxton v. Orlans & Assoc.*, 2010 WL 33855230, *3 (E.D. Mich. 2010) (Cox, J.).

Post-*Williams v. Trott* case law from the Supreme Court recognized that lawyers and law firms, in addition to having potential FDCPA liability for using an "instrumentality of interstate commerce or the mails in any business the principle of which is the collection of any debts" (i.e., sending letters demanding payment), may also be "regularly engaged in debt collection" such that they are "debt collectors" as defined in the FDCPA.  *See Heintz*, 514 U.S. 299 (The FDCPA "applies to attorneys who 'regularly' engage in consumer-debt-collection activity,

even where that activity consists of litigation.").  Nothing in *Heintz* or *Jerman*[6]

suggests that, under the circumstances presented in *William v. Trott* – no demand

letter was sent by the law firm and the law firm was only assisting its client in non-

judicial foreclosure – a law firm is automatically transformed into a debt collector.

But, a debt collector may either be one who "uses any instrumentality of interstate

commerce or the mails in any business the principle of which is the collection of

any debts" *or* one "who regularly collects or attempts to collect, directly or

indirectly, debts owed or due or asserted to be owed or due another."  Thus, even if

the initial letter sent by Trott & Trott to plaintiff was not demand letter as held in

*Claxton*, an additional inquiry is plainly required to determine if Trott & Trott is a

"debt collector":  whether Trott & Trott regularly engages in debt collection

activity.  However, Trott & Trott has not offered any evidence, such as an affidavit,

to suggest that it is not regularly engaged in debt collection activity, which was

also the basis for the court's decision in *Claxton*, *supra*; *see also Gathing*, 2010

---

[6] *Jerman* involved a judicial foreclosure complaint filed by a law firm on behalf of its client, the mortgage-holder (Countrywide).  The complaint included a "Notice," later served on Jerman, stating that the mortgage debt would be assumed to be valid unless Jerman disputed it in writing.  Jerman's lawyer sent a letter disputing the debt, and the law firm sought verification from Countrywide.  When Countrywide acknowledged that Jerman had, in fact, already paid the debt in full, the law firm withdrew the foreclosure lawsuit.  Jerman then filed her own lawsuit seeking class certification and damages under the FDCPA, contending that the law firm violated § 1692g by stating that her debt would be assumed valid unless she disputed it in writing.  The Sixth Circuit held that, under the circumstances, the bona fide error defense applied and dismissed the law suit.  The Supreme Court reversed, holding that mistakes-of-law are not included in the scope of the bona fide error defense.

WL 889945, *13 ("There is no evidence before the court at this time as to whether or not the [attorney/law firm] defendants regularly engage in debt collection, and as such are debt collectors.  For this reason, the court rejects the [attorney/law firm] defendants claim that, as attorneys, they are excluded from the FDCPA's definition of a 'debt collector.'").  Thus, in the view of the undersigned, Trott & Trott did not satisfy its burden under the summary judgment standard of coming forward with *prima facie* evidence showing that does not regularly engage in debt collection.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986) (The moving party has the burden of production to make a *prima facie* showing that it is entitled to summary judgment.).  The motion for summary judgment as to plaintiff's FDCPA claim should be denied on this basis, without prejudice.

Trott & Trott also argues that even if it were deemed a debt collector under the FDCPA, it fully complied with the act's verification requirements and both Trott & Trott and Wachovia are therefore entitled to summary judgment on this basis.  According to 15 U.S.C. § 1692g(b):

> If the [borrower] notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the [debtor] requests the name and address of the original creditor, the debt collector shall cease collection of the debt ... until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the [mortgagee], and a copy of such verification or judgment, or name and address of the [mortgagee], is

mailed to the [borrower] by the debt collector.

Therefore, a person that satisfies the definition of "debt collector" must confirm "in writing that the amount being demanded is what the [mortgagee] is claiming is owed." *Mabry v. Ameriquest Mortg. Co.*, 2010 WL 1052353 (E.D. Mich. 2010) (citations omitted). But, there is no duty to forward "'copies of bills or other detailed evidence of the debt.'" *Rudek v. Frederick J. Hanna & Assocs., P.C.*, 2009 WL 385804 (E.D. Tenn. 2009), citing, *Chaudhry v. Gallerizzo*, 174 F.3d 394, 406 (4th Cir.1999). For example, a debtor collector's response to a request to validate a borrower's debt complied with § 1692g(b) when it consisted of the borrower's name, the property address, origination date, loan amount, the current mortgagee and its address, and the original mortgagee and its address. *Mabry*, 2010 WL 1052353.

On August 14, 2009, Trott & Trott sent a letter attempting to obtain payment on the mortgage loan from plaintiff on behalf of Wachovia. (Dkt. 19, Ex. B). Wachovia and Trott & Trott argue that plaintiff's first 18 page request dated August 28, 2009, exceeded the scope and limits of the FDCPA and, in any event, it complied with the request by responding to plaintiff's inquiry with a payment history. (Dkt. 19, Exs. D, E). Trott & Trott, on behalf of Wachovia, sent plaintiff a letter on September 4, 2009 enclosing his payment history. This letter also asked plaintiff to compare the payment history with his payment records and advise Trott

& Trott of any discrepancies.  The letter indicated that plaintiff had raised

"additional issues which Wachovia is investigating.  Someone from Wachovia will

communicate directly with you on those issues."  (Dkt. 19, Ex. E).  It is not clear

what these issues were or whether any further communications between Wachovia

and plaintiff took place directly.  All further communications, attached to the

motions for summary judgment, was between Trott & Trott, on behalf of

Wachovia, and plaintiff.

Plaintiff's second letter dated November 18, 2009, claims that he did not

receive any response and requests an "audit" among other things.  (Dkt. 19, Ex. F).

In a letter dated December 31, 2009, plaintiff claims that defendants "are in

default" and he is providing them "constructive notice" of such default.  (Dkt. 19,

Ex. F).  He then goes on to cite a host of Michigan Court Rules regarding pleading

and defaults.  It is not clear whether these documents were received by defendants

at the same time, but they refer to them collectively as plaintiff's "second" letter

and responded to both of them on January 14, 2010.  (Dkt. 19, Ex. G).  In the

response, Trott & Trott advised plaintiff that the Sheriff's sale had taken place on

November 18, 2009 and that the redemption period would expire on May 18, 2010.

*Id*.  In addition, Trott & Trott advised plaintiff that it did not believe that his

correspondence constituted a "qualified written request" and stated that response

was required.  *Id*.  On February 19, 2010, plaintiff sent a third letter, claiming fraud

and requesting a host of written documents and informing defendants of his intention to sue them.  (Dkt. 19, Ex. H).  In response, Trott & Trott again advised plaintiff of the date of the sale and the date on which the redemption period would expire and that it did not consider his correspondence to be a "qualified written request."  (Dkt. 19, Ex. I).  It does not appear that plaintiff advised Trott & Trott of any discrepancies, as requested.

It may well be that defendants' letter dated September 4, 2009 complied with the FDCPA as set forth in *Mabry*, *supra*, however, given that defendants have not included a complete copy of that letter, with the attached payment history, to their motions, it is impossible for the undersigned to undertake this evaluation.  It is quite likely that the critical information required in the response, as described in *Mabrey*, would be included on the attachment to the letter.  In addition, defendants offer no evidence regarding the authenticity of any of their exhibits.  Thus, defendants' motion for summary judgment on the FDCPA should be denied without prejudice.

Plaintiff also claims to have made earlier "qualified written requests" to which no response was received.  (Dkt. 21-1, Pg ID 703-708, 710-715).  Defendant Wachovia does not address these letters and thus, no relief was requested nor will be granted to Wachovia as to any FDCPA that plaintiff has asserted as to these letters.

Report and Recommendation
Motions to Dismiss/Summary Judgment
*Tatar v. Trott & Trott*; Case No. 10-12832

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that defendants' motions to dismiss and/or for summary judgment be **GRANTED** in part and **DENIED** in part, without prejudice.  Should this report and recommendation be adopted, the only remaining pending claims would be those under the Fair Debt Collection Practices Act.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).

The response must specifically address each issue raised in the objections, in the

same order, and labeled as "Response to Objection No. 1," "Response to Objection

No. 2," etc.  If the Court determines that any objections are without merit, it may

rule without awaiting the response.

Date:  August 3, 2011                         s/Michael Hluchaniuk_____
                                              Michael Hluchaniuk
                                              United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on August 3, 2011, I electronically filed the foregoing paper
with the Clerk of the Court using the ECF system, which will send electronic
notification to the following: Andrew J. Thomas, and I certify that I have mailed by
United States Postal Service the paper to the following non-ECF participant(s):
John Tatar, 16451 Savoie, Livonia, MI 48154.

                                              s/Tammy Hallwood_____
                                              Case Manager
                                              (810) 341-7887
                                              tammy_hallwood@mied.uscourts.gov

Report and Recommendation
Motions to Dismiss/Summary Judgment
*Tatar v. Trott & Trott*; Case No. 10-12832